[L.A. No. 30394. In Bank. Oct. 3, 1975.]

KANDIE NEWING, a Minor, etc., et al., Plaintiffs and Respondents, v. STEVEN EUGENE CHEATHAM, as Administrator, etc., Defendant and Appellant.

352

354

**COUNSEL**

Luce, Forward, Hamilton & Scripps, C. Douglas Alford, James K. Eckmann and William M. Schindler for Defendant and Appellant.

Ned Good for Plaintiffs and Respondents.

## OPINION

SULLIVAN, J.—In this action for damages for wrongful death arising out of the crash of a private airplane, defendant Steven Eugene Cheatham as administrator of the estate of Harold Cheatham (hereafter Cheatham) deceased appeals from a judgment entered upon a jury verdict in favor of plaintiffs and against decedent's estate in the sum of $125,000. Plaintiffs are the surviving wife and children of Richard Newing, an occupant of the plane who died in the crash. Defendant's decedent who also died in the crash was the owner and pilot of the plane.

About 1 p.m. on Sunday, October 25, 1970, Richard Newing, Harold Cheatham, and Ronald Bird departed from Brown Field at Chula Vista, California, aboard a single-engine Cessna 172 aircraft owned and piloted by Cheatham. Neither Newing nor Bird was a licensed pilot. At the time of take-off the weather was clear and the visibility unrestricted. There was no evidence that the plane landed at any other field that afternoon, or that it sent any radio messages. When it failed to return, a search was commenced. On the following day the plane's wreckage was located by a search aircraft in mountainous terrain about 13 miles east of Tijuana, Mexico, and an equal distance southeast of Brown Field. A rescue party found all occupants of the airplane dead. The clock on the instrument panel was stopped at 5:18.

Plaintiffs brought this action for wrongful death alleging that the crash had been caused by Cheatham's negligence.[1] At trial, three theories were advanced in support of plaintiffs' case. The first was that Cheatham had negligently permitted the airplane to run out of fuel while in flight. The second was that he had been negligent as a matter of law in that he had violated applicable federal air regulations. Finally, Cheatham's negligence was said to be established by the doctrine of res ipsa loquitur.

In support of the first of these theories, plaintiffs offered the testimony of Jorge Areizaga Rojo, then Commandante of the Tijuana Airport, and of Jesus Leon an airport mechanic. Rojo, who testified as an expert witness, had been a member of the rescue party that first reached the wreckage of the aircraft. Accompanied by Leon, he returned to the site

---

[1]The complaint also alleged wilful misconduct on Cheatham's part, as was required by the aircraft guest statute (Pub. Util. Code, § 21406). The trial court expressed the opinion that this statute was preempted by paramount federal law, although no explicit ruling on the point appears to have been made. The point has not been raised on appeal. It is to be noted that the above statute has been repealed. (Stats. 1973, ch. 803, p. 1426.)

on the second day after the crash in order to gather information for a report to the Mexican authorities. Rojo testified that he visually inspected the fuel tanks of the aircraft, which were carried on its wings, but saw no fuel. He also attempted, but without success, to drain fuel from the bottom of each tank by removing drain plugs.

Leon testified that he had inspected the aircraft's fuel system, although he had not dismantled it, but had found no trace of fuel. Both men visually inspected the ground beneath the aircraft, but saw no indication of fuel spillage. They also attempted to measure the fuel in one of the wing tanks; Leon estimated the level of the fuel to be three-sixteenths of an inch. Rojo indicated that whatever fuel remained in the tanks was probably "unusable," in the sense that it was not a sufficient quantity to reach the engine. Rojo also testified concerning the general structural condition of the aircraft, the appearance of the propeller and control surfaces, the upright position in which the plane had come to rest, and the general description of the accident site. All of these factors, he said, indicated that the crash had been caused by fuel exhaustion.

On cross-examination, however, Rojo conceded that the appearance and condition of the plane would have been the same if the crash had been caused by engine failure or some similar mechanical malfunction resulting in loss of power. He also indicated that since the aircraft had not been brought to a level position before he had attempted to drain fuel from the tanks, a usable amount of fuel might have remained within. He admitted that there had been no very thorough investigation of other potential causes of the crash. Despite the foregoing, however, he remained of the opinion that the plane had crashed because it had run out of fuel.

Plaintiffs also called as an expert witness Michael Potter, an airline pilot who had logged some 1,200 hours of flight time in small aircraft, including 200 hours in a Cessna 172. Potter testified at length concerning the training received by student pilots with respect to fuel management and emergencies in flight. He stated that a prudent pilot maintains at the minimum a 45-minute reserve of fuel, and ordinarily flies high enough above surrounding terrain to permit his aircraft to glide to a safe landing in the event of a power failure. Potter also testified that, according to the operator's manual, a Cessna 172 has sufficient fuel capacity to fly to 4.3 hours when operated at the usual power settings and with a "lean" fuel mixture. Thus, he said, the Cheatham plane, if operated in the usual manner with respect to power settings, fuel mixture, and altitude, should

have run out of fuel at just the time indicated on its damaged clock.[2] However, he indicated on cross-examination that the endurance of a Cessna 172 can be greater or less than 4.3 hours depending upon the manner in which it is operated. Despite this, Potter said that the crash had probably been caused by fuel exhaustion and the pilot's failure to maintain proper terrain clearance. This opinion was based upon his examination of photographs of the wreckage, his observations made during overflights of the crash site, the testimony of Rojo and Leon, and an experiment in which he ran the engine of a stationary Cessna 172 until its fuel supply was exhausted. From such experiment Potter found that five-sixteenths of an inch of fuel remained in the tanks after the engine had stopped.

Defendant called as an expert witness Robert Rudich, an experienced air traffic controller who had written widely on the subject of air crash investigations and had participated in many such investigations, though chiefly as an analyst of cockpit recording devices and as an editor of final reports. Rudich expressed no opinion as to the cause of the crash, but testified instead about the procedures that must be employed in a sound air crash investigation. According to Rudich, such an inquiry must consist of a progressive "ruling out" of the whole gamut of potential causes ranging from human error to mechanical or structural failure. Where fuel exhaustion is suspected, the entire fuel system must be dismantled and painstakingly inspected from end to end in order to eliminate the possibility that one of its components has malfunctioned. In addition, the plane's other systems must be checked for signs of similar mechanical failure. The court did not permit Rudich to express an opinion as to the quality of the investigation conducted by Rojo and Leon, although the implication of his testimony was that their investigation had been rudimentary at best. However, Rudich was allowed to testify about an experiment he performed on a detached Cessna 172 wing arranged at an angle approximating that of the wing of the downed plane as shown in photographs of the wreckage. Rudich found that it required 7.5 gallons of gasoline to raise the fuel level in the wing tank to three-sixteenths of an inch. This was said to constitute a usable amount of fuel.

In addition to this expert testimony, defendant introduced evidence that the three dead men had been drinking beer together on the day of

---

[2]According to Rojo, the clock probably had been stopped by the impact of the crash. Thus, a crash at 5:18, the time at which the clock stopped, would have occurred just 4.3 hours after the take-off at 1 p.m. However, there was no evidence that the clock had been properly set. Nor was there any evidence as to the altitude, power settings, or fuel mixture at which the plane had been operated.

the crash. The owner of a National City tavern testified that Newing, a man named "Harold," and another man had drunk draft beer in his establishment for about an hour that morning, although he was unable to say how much beer they had consumed. A member of the rescue party testified that eight or nine empty beer cans had been found in the wreckage of the Cheatham plane. Evidence was also produced that the Mexican physicians who had performed autopsies on the bodies of the three men, had noted a strong odor of alcohol emanating from the remains of Cheatham and Bird, but not from Newing's.

After the close of the evidence, the trial judge advised counsel that he would not instruct the jury on the defenses of assumption of risk and contributory negligence. He then granted plaintiffs' motion for a directed verdict on the issue of liability, concluding that the elements of res ipsa loquitur had been established as a matter of law and that the inference of negligence arising from the doctrine had not been rebutted as required by Evidence Code section 646. The jury returned a verdict in favor of plaintiffs in the amount of $125,000. Judgment was entered accordingly. This appeal followed.

We address ourselves at once to defendant's main contention that the trial court committed prejudicial error by directing a verdict on the issue of liability. Our consideration of this issue requires us to resolve two subordinate questions: First, whether, as the trial court concluded, the doctrine of res ipsa loquitur established Cheatham's negligence as a matter of law; second, whether, as it also determined, the defenses of contributory negligence and assumption of risk as a matter of law were not applicable to the case.

We proceed to discuss these questions in the above order. We do so mindful of the familiar rules governing the granting of a motion for a directed verdict. Adverting to them in the context of a directed verdict in favor of the plaintiff, we had this to say in *Walters* v. *Bank of America* (1937) 9 Cal.2d 46, 49 [69 P.2d 839, 110 A.L.R. 1259]: "The trial court, in a proper case, may direct a verdict in favor of a party upon whom rests the burden of proof, in this case the plaintiff. Substantially the same rules apply to directed verdicts in favor of plaintiffs as apply to such verdicts in favor of defendants. [Citations.] A directed verdict may be granted, when, disregarding conflicting evidence, and indulging every legitimate inference which may be drawn from the evidence in favor of the party against whom the verdict is directed, it can be said that there is no evidence of sufficient substantiality to support a verdict in favor of

such party, if such a verdict has been rendered. [Citations.] In passing on the propriety of the trial court's action in directing a verdict, the doctrine of scintilla of evidence has been rejected in this state. [Citation.] A motion for a directed verdict may be granted upon the motion of the plaintiff, where, upon the whole evidence, the cause of action alleged in the complaint is supported, and no substantial support is given to the defense alleged by the defendant. [Citations.]" (See also *Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 745 [87 Cal.Rptr. 376, 470 P.2d 360]; *Parker* v. *James Granger, Inc.* (1935) 4 Cal.2d 668, 678-679 [52 P.2d 226], cert. den., 298 U.S. 644 [80 L.Ed. 1375, 56 S.Ct. 958]; *Estate of Lances* (1932) 216 Cal. 397, 400-401 [14 P.2d 768].)

 It is settled law in this state that the "doctrine of res ipsa loquitur is applicable where the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the one responsible. [Citations.]" (*Di Mare* v. *Cresci* (1962) 58 Cal.2d 292, 298-299 [23 Cal.Rptr. 772, 373 P.2d 860].) According to the classic and oft-repeated statement, there are three conditions for the application of the doctrine: " '(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.' " (*Ybarra* v. *Spangard* (1944) 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258]; see *Wolfsmith* v. *Marsh* (1959) 51 Cal.2d 832, 835 [337 P.2d 70].) The existence of one or more of these conditions is usually a question of fact for the jury. (*Danner* v. *Atkins* (1956) 47 Cal.2d 327, 331 [303 P.2d 724]; *Seneris* v. *Haas* (1955) 45 Cal.2d 811, 826-827 [291 P.2d 915, 53 A.L.R.2d 124]; BAJI (5th ed.) Nos. 4.00, 4.01.) In a proper case, however, they all may exist as a matter of law. (*Di Mare* v. *Cresci, supra,* 58 Cal.2d 292, 300; *Roddiscraft, Inc.* v. *Skelton Logging Co.* (1963) 212 Cal.App.2d 784, 794 [28 Cal.Rptr. 277]; BAJI (5th ed.) Nos. 4.02 (1973 pocket part), 4.03.) The question to be answered here is whether, as the trial judge determined, this is such a case.

 *Turning to consider the foregoing three conditions for the application of the doctrine, we direct our attention to the first condition, namely that the accident must be of a kind which ordinarily does not occur in the absence of negligence. In determining whether this condition is satisfied, a court may consider common knowledge, the testimony of expert witnesses, and the circumstances relating to the*

particular accident at issue. (*Zentz* v. *Coca Cola Bottling Co.* (1952) 39 Cal.2d 436, 446 [247 P.2d 344].) It need not be concluded that negligence is the only explanation of the accident, but merely the most probable one. (*Di Mare* v. *Cresci, supra,* 58 Cal.2d 292, 298-299; *Roddiscraft, Inc.* v. *Skelton Logging Co., supra,* 212 Cal.App.2d 784, 797.) We deal here in probabilities, not certainties.

Whether aircraft accidents are more often than not the result of negligence is a question that has vexed the courts of many jurisdictions for decades. (See cases collected in Annot., 6 A.L.R.2d 528 (1949), and Speiser, Res Ipsa Loquitur (1972) § 10:1 et seq.) According to Prosser, many early cases took the position that not enough was known about the hazards of flight to permit an inference of negligence to arise from the mere fact of a plane crash. (Prosser, Law of Torts (4th ed. 1971) p. 216.) Advances in the safety and frequency of air travel, however, have led to a trend in the opposite direction. Thus, while judicial opinion on the subject is by no means unanimous, res ipsa loquitur, over the years, has been applied to an increasing variety of aircraft mishaps. (See, e.g., *Smith* v. *O'Donnell* (1932) 215 Cal. 714 [12 P.2d 933]; *Mittelman* v. *Seifert* (1971) 17 Cal.App.3d 51 [94 Cal.Rptr. 654]; *Nelson* v. *American Airlines, Inc.* (1968) 263 Cal.App.2d 742 [70 Cal.Rptr. 33]; *Roberts* v. *Trans World Airlines* (1964) 225 Cal.App.2d 344 [37 Cal.Rptr. 291]; *Abbott* v. *Page Airways, Inc.* (1969) 23 N.Y.2d 502 [297 N.Y.S.2d 713, 245 N.E.2d 388, 35 A.L.R.3d 697]; *Cox* v. *Northwest Airlines, Inc.* (7th Cir. 1967) 379 F.2d 893; *United Air Lines, Inc.* v. *Wiener* (9th Cir. 1964) 335 F.2d 379; *Southeastern Aviation, Inc.* v. *Hurd* (1962) 209 Tenn. 639 [355 S.W.2d 436]; *San Diego Gas & Electric Co.* v. *United States* (9th Cir. 1949) 173 F.2d 92; Prosser, Law of Torts, *supra,* p. 216; 9 Cal.Jur.3d, Aviation, § 81, pp. 101-102.)

It is not fatal to the ruling here under review that the above cited cases dealt with the application of the doctrine of res ipsa loquitur as a question of fact to be determined by the jury whereas in the case at bench, it was applied by the trial judge to the air crash here involved as a matter of law. Essentially any differences in the manner of establishing the doctrine lies in the state of the evidence and the posture of the case. (*Zentz* v. *Coca Cola Bottling Co., supra,* 39 Cal.2d 436, 440.) Although whether any one of the conditions for the application of the doctrine has been met may be usually a question of fact (*Seneris* v. *Haas, supra,* 45 Cal.2d 811, 827), nevertheless under the particular circumstances of the case, any one of them may exist as a matter of law (*Roddiscraft, Inc.* v. *Skelton Logging Co., supra,* 212 Cal.App.2d 784, 794). Where no issue of

fact has been raised as to any of the three conditions, the application of the doctrine is compelled as a matter of law. (*Di Mare* v. *Cresci, supra,* 58 Cal.2d 292, 300; *Roddiscraft, Inc.* v. *Skelton Logging Co., supra;* as to the first condition compare *Roddiscraft* at pp. 795-797, question of fact, conditional res ipsa instruction with *Di Mare* at pp. 299-300, question of law, unconditional res ipsa instruction.) In sum, the fact that usually the application of the doctrine involves the resolution of a question of fact as to one or more of the conditions does not foreclose the possibility that in the light of the circumstances surrounding the particular air crash, the application of the doctrine may be compelled as a matter of law.[3]

As we previously noted, the first condition for invocation of the res ipsa doctrine is satisfied if under the facts of the case, common experience indicates that the accident would not have occurred unless there had been negligence on the part of someone. In the instant case, it seems reasonably clear in light of the circumstances surrounding the crash that the accident ordinarily would not have taken place in the absence of negligence. The evidence is uncontradicted that the airplane took off from Chula Vista in clear weather with no restrictions on visibility. There is no evidence that weather conditions contributed in any way to the crash of the plane.[4] Nor was there any evidence that the plane had collided with other aircraft while in flight. Indeed the condition of the plane after the crash was such as to eliminate an air collision. ██ It thus fell to the ground, apparently unaffected by

---

[3]Defendant disputes this proposition, citing *Trihey* v. *Transocean Air Lines* (9th Cir. 1958) 255 F.2d 824, an admiralty action for wrongful death brought after the unexplained crash of an airliner at sea. The court rejected the plaintiff's contention that res ipsa loquitur entitled him to judgment as a matter of law. This holding, however, seems based not so much on an evaluation of the likelihood of negligence as a causative factor in such a crash as upon the view that res ipsa loquitur can never compel the inference of negligent causation in any case, but can only give rise to a question for the trier of fact. Such a limitation on the function of res ipsa loquitur is not recognized in California.

[4]This is sufficient to distinguish the case of *Carrick* v. *Pound* (1969) 276 Cal.App.2d 689 [81 Cal.Rptr. 234], cited by defendant, in which the plaintiff was injured when the boat in which he was riding was thrown about by a sudden swell. On the other hand, in *Lockhart* v. *Martin* (1958) 159 Cal.App.2d 760 [324 P.2d 340], which involved a similar mishap, there was no direct evidence concerning such a swell. However, the court said that since boats are necessarily affected by the natural action of the water, no inference of negligence could arise from the boat's sudden and unexpected movement. Similar reasoning has been employed in cases involving injuries sustained as the result of the abrupt movement of an aircraft due, apparently, to natural conditions. (See, e.g., *Gafford* v. *Trans-Texas Airways* (6th Cir. 1962) 299 F.2d 60.) Such cases are to be distinguished, however, from cases like that at bench, in which there is no evidence that natural conditions affected the operation of the aircraft. (See ·Prosser, Law of Torts, *supra,* p. 216.)

external factors, only a few miles from the airport whence it had departed some hours earlier. Under the circumstances of the present case, "it seems reasonably clear that the accident probably would not have occurred without negligence by someone." (*Zentz* v. *Coca Cola Bottling Co., supra,* 39 Cal.2d 436, 447.) The evidence bearing on these circumstances is not only uncontradicted but of such a nature that no issue of fact is raised as to the existence of the first condition for the application of the doctrine of res ipsa loquitur. (*Roddiscraft, Inc.* v. *Skelton Logging Co., supra,* 212 Cal.App.2d 784, 794.) We conclude that the first condition is established as a matter of law.

■ The doctrine's second condition, as traditionally formulated, is that the agency or instrumentality causing the accident must have been within the exclusive control or management of the defendant. The purpose of this requirement is to link the defendant with the probability, already established, that the accident was negligently caused. (*Zentz* v. *Coca Cola Bottling Co., supra,* 39 Cal.2d 436, 443.)

■ The facts of this case are such as to satisfy this condition, like the first, as a matter of law. Cheatham was the owner of the aircraft, and there is no dispute that he was at the controls when the plane took off on its final flight. Since neither of his passengers seems to have been a licensed pilot, there is no reason to suppose that anyone other than he operated the plane at any time before the crash. Moreover, Cheatham's ultimate responsibility for all decisions concerning the aircraft's operation was established by an applicable federal air regulation.[5] (See *Lange* v. *Nelson-Ryan Flight Service, Inc.* (1961) 259 Minn. 460 [108 N.W.2d 428, 432].) These facts are sufficient to distinguish this case from those cited by defendant, in which no such exclusive control or responsibility existed. (*Olson* v. *Whitthorne & Swan* (1928) 203 Cal. 206 [263 P. 518, 58 A.L.R. 129]; *Gotcher* v. *Metcalf* (1970) 6 Cal.App.3d 96 [85 Cal.Rptr. 566]; *Cordova* v. *Ford* (1966) 246 Cal.App.2d 180 [54 Cal.Rptr. 508].)

Defendant argues, however, that plaintiffs have not negated the possibility that the crash was caused by something other than the manner in which the plane was operated. He states that such crashes commonly occur because of mechanical failures of one kind or another, and cites a considerable array of cases in which such failures were said to have

---

[5]14 Code of Federal Regulations, section 91.3(a) provides: "The pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft."

occurred. The short answer is that the record is devoid of evidence of such kind of mechanical failure. ■ Furthermore, if such evidence had been produced, it would have no relevance to the second condition for the application of res ipsa loquitur, namely whether the airplane was within the exclusive control of Cheatham. ■ With respect to the operation and maintenance of the aircraft, the control exercised by Cheatham as owner-pilot was complete. There thus can be no doubt that this element of the doctrine exists as a matter of law.

The third of the traditional conditions for the application of res ipsa loquitur is that the accident must not have been caused by any voluntary action or contribution on the part of the plaintiff. ■ The purpose of this requirement, like that of control by the defendant is to establish that the defendant is the one probably responsible for the accident. (*Zentz* v. *Coca Cola Bottling Co., supra,* 39 Cal.2d 436, 444.) The plaintiff need not show that he was entirely inactive at the time of the accident in order to satisfy this requirement, so long as the evidence is such as to eliminate his conduct as a factor contributing to the occurrence. (*Shahinian* v. *McCormick* (1963) 59 Cal.2d 554, 560 [30 Cal.Rptr. 521, 381 P.2d 377].)

Defendant contends that the trial court confused the existence of this third condition with the availability of the defenses of assumption of risk and contributory negligence. It is true that these are separate questions, since the burden of proof with respect to the first rests on the plaintiff as part of his general obligation to establish the defendant's negligence, while the burden of proof as to the latter rests on the defendant. (*Shahinian* v. *McCormick, supra,* 59 Cal.2d 554, 560; *Zentz* v. *Coca Cola Bottling Co., supra,* 39 Cal.2d 436, 444.) ■ Quite apart from whether or not the trial court's remarks indicate that it confused the above two questions, the uncontradicted evidence shows that the body of plaintiffs' decedent was found by the rescue party in one of the rear seats of the four-seater aircraft. From that position, it is difficult to imagine how he could have interfered physically with the operation of the aircraft in any way. (Cf. *Guerra* v. *Handlery Hotels, Inc.* (1959) 53 Cal.2d 266, 271 [1 Cal.Rptr. 330, 347 P.2d 674].) Moreover, as noted above, there is no dispute that Cheatham was the pilot in command of the aircraft, and it must be presumed that he made all decisions concerning its operation and preparation for flight. There is no basis for supposing that Newing exerted any influence with respect to the making of these decisions. Thus the evidence concerning the basic operation of the aircraft is such as to conclusively eliminate Newing's conduct as a potential cause of the accident.

A separate question in this respect, however, is said to arise from the evidence that the three men drank beer together on the day of the crash. Defendant argues that Newing's conduct in drinking with Cheatham may have contributed to the happening of the accident, and that plaintiffs have not carried their burden with respect to negating this possibility. For reasons which will be more fully discussed in connection with the defenses of contributory negligence and assumption of risk, the evidence concerning the beer drinking was too vague to support a finding that Newing contributed by means of it to the happening of the crash. Plaintiffs are not obligated to eliminate entirely speculative causal possibilities involving the conduct of their decedent. It is enough if they rebut those inferences of their decedent's responsibility which are reasonably supported by the evidence. Plaintiffs discharged this burden by introducing evidence from which it must be inferred that Newing did not interfere with Cheatham's operation or command of the aircraft.

■ The evidence presented in the trial court, therefore, was such as to satisfy all three conditions for the applicability of res ipsa loquitur as a matter of law. Since the facts giving rise to the doctrine were undisputed, the inference of negligence arose as a matter of law (*Di Mare* v. *Cresci, supra,* 58 Cal.2d 292, 300); to put it another way, the conclusion is compelled that there is a balance of probabilities pointing to the decedent's negligence. (See *Zentz* v. *Coca Cola Bottling Co., supra,* 39 Cal.2d 436, 449; Prosser, *Res Ipsa Loquitur in California* (1949) 37 Cal.L.Rev. 183, 194-195.) This gave rise to a presumption affecting the burden of producing evidence pursuant to Evidence Code section 646.[6] It then became defendant's obligation to introduce sufficient evidence to sustain a finding either that the accident resulted from some cause other than Cheatham's negligence, or, else, that Cheatham exercised due care

---

[6]Evidence Code section 646 provides: "(a) As used in this section, 'defendant' includes any party against whom the res ipsa loquitur presumption operates.

"(b) The judicial doctrine of res ipsa loquitur is a presumption affecting the burden of producing evidence.

"(c) If the evidence, or facts otherwise established, would support a res ipsa loquitur presumption and the defendant has introduced evidence which would support a finding that he was not negligent or that any negligence on his part was not a proximate cause of the occurrence, the court may, and upon request shall, instruct the jury to the effect that:

"(1) If the facts which would give rise to a res ipsa loquitur presumption are found or otherwise established, the jury may draw the inference from such facts that a proximate cause of the occurrence was some negligent conduct on the part of the defendant; and

"(2) The jury shall not find that a proximate cause of the occurrence was some negligent conduct on the part of the defendant unless the jury believes, after weighing all the evidence in the case and drawing such inferences therefrom as the jury believes are warranted, that it is more probable than not that the occurrence was caused by some negligent conduct on the part of the defendant."

in all possible respects wherein he might have been negligent. (See Cal. Law Revision Com. comment to Evid. Code, § 646.) Defendant introduced no such evidence. He has at most argued that the crash *could* have resulted from causes other than the negligence of his decedent. Mere speculation of this sort is insufficient to discharge defendant's burden of explanation. (*Dierman* v. *Providence Hospital* (1947) 31 Cal.2d 290, 295-296 [188 P.2d 12]; *Roberts* v. *Trans World Airlines, supra,* 225 Cal.App.2d 344, 354-355.) Consequently, the trial court was correct in concluding that res ipsa loquitur established Cheatham's negligence as a matter of law.

Having thus determined that the negligence of Cheatham was established as a matter of law and having thereby resolved the first of the two questions posed at the beginning of this opinion, we now proceed to consider the second question, namely whether the defenses of contributory negligence and assumption of risk were inapplicable on the present record. The necessity for this is obvious; the fact that an inference of negligence is compelled as a matter of law does not mean that there was liability as a matter of law. (See *Di Mare* v. *Cresci, supra,* 58 Cal.2d 292, 300.) Indeed defendant argues in the alternative that even if there was no question of fact as to the application of res ipsa loquitur, such a question did arise as to the above defenses.

As noted above, the question whether these defenses are available is separate from that concerning the third condition of res ipsa loquitur. Defendant's argument that the jury should have been instructed on the defenses is based upon the evidence, previously adverted to, that the three men drank beer together on the day of the crash. This is said to make the case analogous to those automobile guest cases which have held that a jury question exists concerning the defenses when the guest, injured in an accident caused by the intoxication of his driver host, participated in the latter's drinking activities or otherwise had reason to know of the driver's intoxication before accepting a ride with him. (*Lindemann* v. *San Joaquin Cotton Oil Co.* (1936) 5 Cal.2d 480, 488 [55 P.2d 870]; *Taylor* v. *Rosiak* (1965) 236 Cal.App.2d 68, 77 [45 Cal.Rptr. 759]; *Bradbeer* v. *Scott* (1961) 193 Cal.App.2d 575, 578 [14 Cal.Rptr. 458]; *Pennix* v. *Winton* (1943) 61 Cal.App.2d 761, 763 [143 P.2d 940, 145 P.2d 561].)[7]

[7]The rule of these cases was limited by the holding in *Williams* v. *Carr* (1968) 68 Cal.2d 579 [68 Cal.Rptr. 305, 440 P.2d 505], that mere contributory negligence could not constitute a defense to an action brought under the automobile guest statute. (*Id.* at p. 588.) However, this limitation is not applicable here, since the guest statute is not at issue.

The proposed analogy, however, is inapposite. The evidence on the point shows only that Cheatham, Newing, and Bird drank some beer. It does not disclose how much they drank, or how it affected them. There is no indication that Cheatham became so obviously intoxicated as to put plaintiffs' decedent on notice as to his inability to operate the plane safely. (See *Wagner* v. *Osborn* (1964) 225 Cal.App.2d 36, 47-50 [37 Cal.Rptr. 27]; *Enos* v. *Montoya* (1958) 158 Cal.App.2d 394, 401 [322 P.2d 472]; *Harlow* v. *Van Dusen* (1955) 137 Cal.App.2d 547, 551 [290 P.2d 911].) In *Mittelman* v. *Seifert, supra,* 17 Cal.App.3d 51, 69, 79, on the other hand, where there was significant evidence of pilot incapacity due to illness, fatigue, and consumption of alcohol and pharmaceuticals, the trial judge's refusal to instruct the jury on contributory negligence and assumption of risk was upheld on appeal. After having carefully reviewed the record, we fail to find any evidence sufficient to raise an issue of fact in respect to either of these two affirmative defenses. We are satisfied that the trial court properly concluded that plaintiffs' decedent as a matter of law neither was himself negligent nor assumed the risk of Cheatham's allegedly alcoholic condition. We conclude that the trial court properly determined that Cheatham was liable for Newing's death as a matter of law and properly granted plaintiffs' motion for a directed verdict on the issue of liability.

 We briefly dispose of defendant's remaining contention, which is that the trial court erred in preventing the witness Rudich from expressing an opinion regarding the adequacy of the investigation conducted by Rojo and the reliability of his conclusion as to the cause of the accident. If any error was committed in this respect, it was not prejudicial, since the clear implication of that portion of Rudich's testimony which was admitted was that Rojo's investigation and opinion were defective. This, however, does nothing to rebut the clear inference of negligence which, in the circumstances of this case, arose from the fact of the crash itself.

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Clark, J., and Richardson, J., concurred.