Thomas P. Farley, J.
This is a motion for summary judgment in an action against the owner of an airplane which crashed, causing injury to persons and property on the ground.
The affidavits presented reveal the following: On November 16,1963, a C-45 Beechcraft airplane crashed shortly after taking off from Zahn’s Airport in Amityville, New York. The plane landed on the lawn of property owned by the plaintiff, Stanley Kata, located in North Lindenhurst, which is about one-half mile from the airport. The pilot and two occupants of the plane were killed on impact and the log maintained by the crew was lost in the burning wreckage. As a result of the crash, personal injury was sustained by the plaintiffs, Stanley Kata, his wife and children, and the family of a relation who was visiting the Katas at the time. In addition, the Kata house and two parked automobiles were damaged.
Defendant, Civil Air Patrol, Inc., admits ownership of the airplane as well as that the flight was made in the course of its business by authorized personnel.
Under section 251 of the General Business Law, enacted in 1959, an owner of aircraft is liable for death or injury to person or property resulting from the use or operation of the aircraft with the permission of the owner “ in any case where the person using or operating the aircraft * * * would be liable ’ \ *290 The purpose of this statute is to make the owner of an airplane liable for its operation just as the owner of a motor vehicle is similarly held liable under section 388 of the Vehicle and Traffic Law (formerly section 59). Section 251, however, differs from the Vehicle and Traffic Law in that it does not attempt to resolve the question of whether the owner’s liability is absolute or is based on negligence or other fault. That issue was expressly left open for determination by a court or by future legislation (1959 Report of N. Y. Law Rev. Comm. N. Y. Legis. Doc., 1959, No. 65 (J), p 23 et seq. see, also, 1958 Report of N. Y. Law. Rev. Comm.; N. Y. Legis. Doc., 1958, No. 65(1), p. 659 et seq.).
The plaintiffs in this case argue that injury to persons or property on the ground caused by an airplane falling to the earth constitutes a trespass for which damages may be assessed without regard to fault. This argument finds support in Rochester Gas & Elec. Corp. v. Dunlop (148 Misc. 849) decided in 1933, where absolute liability was imposed for damage caused to an electric transmission tower by an airplane making a forced landing. The theory upon which liability was predicated was that there was an intentional rather than accidental trespass. The Dunlop case was followed by two decisions rendered in the Federal courts sitting in New York (Margosian v. United States Airlines (127 F. Supp. 464); Hahn v. United States Airlines (127 F. Supp. 950), but has been recently rejected by the Supreme Court of New York in Wood v. United Air Lines (32 Misc 2d 955, affd. 16 A D 2d 659). The New York Court of Appeals has not considered the question as yet.
Preliminarily, it should be noted that some jurisdictions impose strict liability for ground damage caused by airplanes by statutory provision. (See Prosser, Torts [2d ed.], § 61, p. 346.) The Restatement of Torts of the American Law Institute which originally recommended strict liability on the theory that aviation was an ultrahazardous activity has since modified its position to restrict the imposition of absolute liability to situations where the nature of the flight itself presents a hazard as in the case of testing experimental aircraft (Restatement, Torts, 2d, vol. 1,1965, § 165). Professor Prosser points out that the question whether there should be strict liability or liability based on negligence has not been conclusively determined by any significant trend of decisions reached in this country (Prosser, § 61, p. 344).
In Wood v. United Air Lines {supra), plaintiffs moved for summary judgment in an action to recover for personal injuries and property damage sustained in their apartment as a result of a midair collision between two airliners. The motion was *291 denied and the decision affirmed by the Appellate Division (16 A D 2d 659). Although the facts in the Wood and Dunlop cases differ somewhat, the court at Special Term, in Wood, after an analysis of the authorities, specifically rejected the claim that absolute liability may be imposed on the trespass theory. The rationale applied in arriving at this conclusion is, in the opinion of the court, sound.
Technological advances and development, and the experiences of the last two decades have dissipated the universal early fears that flying was an ultrahazardous occupation. The application of the trespass theory advanced in the Dunlop case appears to be based to some extent on a recognition of such earlier fear. The opinion, for example, reads (pp. 851-852): “ The correctness of that statement [that airplanes fall from causes over which the pilot has no control] we believe cannot be questioned, at least in the present state of aircraft development. When, therefore, a man takes over another man’s land a machine which he knows is liable to crash upon and do injury to that land and the structures upon it, can it be said that he is an accidental trespasser within the meaning of those decisions which have exempted the trespasser from liability? * * # If * * * common experience requires the opposite conclusion, namely, that no matter how perfectly constructed or how carefully managed an aeroplane may be, it may still fall, then the man who takes it over another’s land and kills his cow or knocks off his chimney, has committed an inexcusable trespass ”. The quotation indicates that the court found an intentional, as distinguished from an accidental, trespass based on a constructive intent imputed to the pilot to land wherever the plane may fall because of the lack of control he possessed over his flight. The decision bears a marked similarity to the holding made in 1822 in Guille v. Swan (19 Johns. 381). A balloonist in that case was found liable in trespass for damage caused to plaintiff’s property by a crowd that collected when he landed under circumstances disclosing that he called for their assistance. The court finding the areonaut had no control over the balloon’s motion horizontally, stated (p. 383): “ he is at the sport of winds and is to descend when and how he can; his reaching the earth is a matter of hazard ’ ’. Aviation, however, has progressed far beyond the stage where the control of flight is left to chance. The pilot of today is in a far different situation than the balloonist who, in 1822, was found to have no control over his motion or the aviator who, in 1933, was presumed to know that he was liable to crash.
*292 Trespass provides a remedy for intentional harm to person or property and the act done must be such as will result in injury with substantial certainty (Phillips v. Sun Oil Company, 307 N. Y. 328). A constructive intent to land in an uncontrollable flight pattern or at the whim of the elements cannot today be realistically imputed from the mere act of flying.
The second question is whether plaintiffs are entitled to summary relief based on the doctrine of res ipsa loquitur. To rebut the inference of negligence, the defendant has referred to the examination before trial of the defendant which tended to show that all occupants of the airplane were capable and experienced pilots and that the plane had been carefully serviced and tested as a regular business policy prior to the accident. Such exculpatory evidence is consistent with the exercise of reasonable care in the maintenance of the aircraft, but does not explain away negligence in its operation due to pilot or navigator error. However, the inference of negligence in operation of the aircraft which arises from the application of the doctrine of res ipsa is not compelled (George Foltis, Inc. v. City of New York, 287 N. Y. 108, 119), and a jury need not find it even though the defendant introduces no evidence at all (Prosser, Torts [2d ed.], 1955, § 43, p. 212). The defendant is under no burden to refute the plaintiff’s prima facie case (Davis v. Goldsmith, 19 A D 2d 514), and its failure to explain does not necessarily indicate negligence on its part (cf. Salomone v. Yellow Taxi Corp., 242 N. Y. 251, 259). Furthermore, proof that an accident occurred is not evidence that it was caused by the defendant’s negligence (cf. George v. City of New York, 22 A D 2d 70, 71, affd. 17 N Y 2d 561), so that the question of whether the inference of negligence will prevail presents an issue of fact unless the prima facie proof is so convincing that the inference of negligence is inescapable (Gerard v. Inglese, 11 A D 2d 381, 382-383). In this case, the only evidence before the court is that an accident occurred. Under such circumstances, the possibility exists that the happening of the accident might be inferred to have resulted from negligent operation of the aircraft or from unavoidable mishap. The court, as a matter of law, may not draw one inference in preference to the other.
In Rehm v. United States (183 F. Supp. 157) plaintiffs brought an action to recover for injuries sustained when a plane struck their automobile while it was proceeding on Southern State Parkway in this county. In that case, the Federal District Court (Zavatt, J.) denied a motion for summary judgment where the plaintiff invoked the doctrine of res ipsa loquitur, holding that even assuming the applicability of that doctrine *293 the mere establishment of a prima facie case is not enough to permit Motion Term to ‘ ‘ usurp the power of the trial judge by drawing now one of the two permissible inferences ’ ’. There is little or no difference in the facts in the Behm case and the instant case. In both cases more than one inference can be drawn therefrom, on one of which (negligence) liability can be predicated and the other (unavoidable accident) it cannot. Under such circumstances, the issues must be presented to the trier of the facts and cannot be summarily disposed of on motion (Nickleski v. Aeronaves de Mexico, S. A., 18 A D 2d 709). The motion is denied.