GERALD THOMPSON *et al.*, Plaintiffs-Appellees, *v*. GERALD LIETZ, Defendant-Appellant.

Fourth District    No. 16608

Opinion filed April 24, 1981.

Heyl, Royster, Voelker & Allen, of Peoria (Lyle W. Allen and James C. Kearns, of counsel), for appellant.

Phebus, Tummelson, Bryan & Knox, of Urbana (Joseph W. Phebus, Betsy Pendleton Wong, and Janet A. Flaccus, of counsel), for appellees.

Mr. JUSTICE WEBBER delivered the opinion of the court:

Plaintiffs brought a medical malpractice suit against the defendant in the circuit court of Champaign County and recovered substantial ver-

dicts. Defendant appeals and we affirm. Plaintiff-husband's recovery was based on the personal injury suffered and plaintiff-wife's recovery was on loss of consortium.

The factual background is relatively uncomplicated. Plaintiff-husband (Gerald) submitted to an operative procedure by defendant for the repair of a bilateral inguinal hernia. The post-operative progress was unsatisfactory in that Gerald suffered pain and swelling in the region for some time and finally experienced severe atrophy of his testicles and penis to the extent that the usual connubial relations have become impossible. All of these anatomical structures were normal prior to the operation.

Some 2½ years following the operation Gerald consulted a urologist who examined and treated him. This doctor testified on Gerald's behalf at trial. He was of the opinion that the atrophy was a permanent condition and was the result of making the hernia repair too tight, cutting off the blood supply to the region. He also believed that Gerald's impotence might be alleviated by the use of hormone treatments, although there has been no real change in his condition, nor improvement, following a regimen of hormone injections. He suggested that what remains of the testicles be removed in order to alleviate the continuing pain and discomfort. The doctor further testified that he was unable to point to any specific acts of negligence in the operative procedure since he was not present and that how tight to make the repair is a matter of judgment; further, that atrophy following this surgery is an uncommon occurrence, but since both testicles became atrophied, the procedure used was deficient.

The head of surgery at a local hospital testified on behalf of the defendant. This doctor stated that atrophy of the type found here can result even from a careful operative procedure. However, according to his testimony, the risk was slight and he was not aware of any other such case. He agreed with plaintiffs' expert that the cause was insufficient blood supply and that the tightness of the repair is a matter of judgment.

Defendant testified on his own behalf and recounted some prior occasions on which Gerald had discussed with him some problems concerning impotency. In the course of post-operative treatment he noticed the atrophy and considered complaints from Gerald about impotency but believed that the problem was emotional in nature in view of his past history. He acknowledged that the current condition was related to the surgery.

Both Gerald and his wife testified that prior to the surgery there had been no problems concerning conjugal relations.

The foregoing represents the testimony only in synoptic form, since one of defendant's principal contentions on appeal is that the trial court erred in submitting the case to the jury on the theory of *res ipsa loquitur*.

At the close of the plaintiffs' case the trial court directed verdicts in favor of the defendant on all theories except *res ipsa.*

The resolution of this issue will depend on an interpretation of the supreme court decision in *Spidle v. Steward* (1980), 79 Ill. 2d 1, 402 N.E.2d 216. Plaintiffs maintain that under *Spidle* a *res ipsa* case may be presented to a jury even though no expert evidence of specific negligence has been presented, it being sufficient that the expert testifies that the injury had some negligent antecedent. Defendant, *contra,* asserts that by citing *Clark v. Gibbons* (1967), 66 Cal. 2d 399, 426 P.2d 525, 58 Cal. Rptr. 125, and *Contreras v. St. Luke's Hospital* (1978), 78 Cal. App. 3d 919, 144 Cal. Rptr. 647, our supreme court, at least *sub silentio,* indicated that specific acts of negligence are required to be presented before the *prima facie* foundation of *res ipsa* has been laid. Otherwise, defendant argues, a bad result will yield liability.

The threshold question in *Spidle* was evidentiary in nature. Plaintiffs' expert there had answered equivocally to the critical question of whether the injury was likely to occur in the absence of negligence and the defendant argued that under such circumstances, *res ipsa loquitur* could not be invoked. The supreme court answered:

> "Unfortunately, the expert in this case answered the question indirectly. We cannot conclude with equanimity, from this colloquy alone, whether he meant fistula formation after hysterectomies is usually a result of negligence or whether there is an equal probability that they occur despite the exercise of due care. In this case, however, the expert also testified about the inadvisability of operating on Mrs. Spidle if her pelvic inflammatory disease was in an acute or an acute flare-up stage. The defendant even agreed with the plaintiffs' expert regarding the inadvisability of operating during an acute stage, although denying that Mrs. Spidle was in such a stage. Evidence was introduced, however, that Mrs. Spidle was in an acute stage and that the defendant, after the operation, admitted he 'operated a little too soon.' In a light most favorable to plaintiffs, a reasonable person could conclude that plaintiffs' expert believed that this fistula, more probably than not, resulted from defendant's negligence. If believed, this is evidence of more than a mere unusual occurrence [citation], from which the jury could have inferred negligence under *res ipsa loquitur.*" 79 Ill. 2d 1, 9-10, 402 N.E.2d 216, 219-20.

The basic emphasis throughout the *Spidle* opinion is on the record as a whole, not on individual, specific acts. In discussing *Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, the court said that control was the controverted factor, and:

> "We see no reason to treat the probability component of *res ipsa*

*loquitur* differently from the control component. Plaintiffs have the burden of proof on each element of *res ipsa loquitur*. And we think that from this record, *read as a whole*, a jury could have decided that each of these elements was proved." (Emphasis added.) 79 Ill. 2d 1, 11, 402 N.E.2d 216, 220.

In discussing *Walker v. Rumer* (1979), 72 Ill. 2d 495, and *Edgar County Bank & Trust Co. v. Paris Hospital* (1974), 57 Ill. 2d 298, the court said:

"We must remain consistent with *Walker* and *Edgar County* nevertheless. We conclude, therefore, that *from all of the evidence*, viewed in a light most favorable to plaintiffs, a jury could have determined that the foundation for the *res ipsa loquitur* doctrine was laid and, further, could have concluded that the defendant was negligent." (Emphasis added.) 79 Ill. 2d 1, 13, 402 N.E.2d 216, 221.

In this connection the court found the California decisions similar. In discussing *Clark* our court said:

"In that case, an expert testified to a low incidence of injuries when due care was used. *Other evidence* tended to establish specific acts of negligence. The court reasoned that this evidence, *combined*, presented a jury· question under *res ipsa loquitur*." (Emphasis added.) 79 Ill. 1, 11, 402 N.E.2d 216, 220.

The court discussed *Contreras*. In that case the only medical evidence on behalf of the plaintiff was the testimony of an intern in the hospital and the hospital records. The intern's testimony related only to what the California court called the "technical aspects" of what occurred and would say nothing more than "[t]his man had an infection." In commenting on *Contreras* our supreme court said:

"Subsequent cases have struck *res ipsa loquitur* counts where expert testimony of a rare and unusual result was not *accompanied by further evidence of negligent acts* that could have caused the injury at issue." (Emphasis added.) 79 Ill. 2d 1, 11, 402 N.E.2d 216, 220-21.

■■ The lesson of *Spidle*, in our judgment, is that when the record, taken as a whole, fairly presents a jury question as to the *res ipsa loquitur* requirements (*i.e.*, injury, control, lack of contributory negligence, and probability of injury), the question must be submitted to the jury and it is error not to do so. Some of the requirements, of course, may not be controverted. In our opinion the record in the instant case meets this test.

■■ Here the medical testimony was stronger than in *Spidle*. Plaintiffs' expert testified that the procedure was deficient. In *Spidle* it was necessary to construe and to make inferences from the medical testimony. Here the experts agreed that the injury probably resulted from the tightness of the repair. Defendant's expert testified that the result can

ensue even from a careful procedure. A classic jury-answering situation was created.

■■ We reject defendant's theory that specific acts of negligence are a necessary predicate for *res ipsa loquitur*. Specific negligence and *res ipsa* are logically and legally mutually exclusive, even though they may be pleaded in the alternative. Since both *Spidle* and the instant case concern medical malpractice, we offer no opinion as to whether the principles stated apply in other situations.

In addition to the *res ipsa* issue defendant raises three other issues for our consideration: (1) the statute of limitations, (2) an evidentiary ruling, and (3) improper closing argument by plaintiffs' counsel.

Defendant maintains that the statute of limitations had run as a matter of law at the time of the filing of the complaint. The trial court submitted the question to the jury as one of fact by means of a modified burden of proof instruction. (Illinois Pattern Jury Instructions, Civil No. 22.01 (2d ed. 1971).) By returning a verdict for the plaintiffs the jury found as a fact that the statute had not run.

The parties agree that the limitation is two years as provided in section 21.1 of the Limitations Act (Ill. Rev. Stat. 1979, ch. 83, par. 22.1), and that the discovery rule applies. Beyond this, there is no agreement. The operation was performed on March 24, 1976, and the complaint was filed August 31, 1978. Defendant claims that Gerald should have discovered his condition of atrophy and impotence shortly after the operation and hence the filing came too late. Plaintiffs assert that defendant misled them during the post-operative period and that Gerald's condition did not become clear until some considerable time following the operation.

Two recent supreme court decisions bear on this question. (*Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, ___ N.E.2d ___, and *Witherell v. Weimer* (1981), 85 Ill. 2d 146, ___ N.E.2d ___.) In *Nolan* the supreme court held that when a party knew or should have known of an injury and its probable wrongful cause is a matter of fact, unless the facts are undisputed, citing *Witherell*.

*Witherell* presents some remarkable parallels to the instant case. There the doctor constantly reassured the plaintiff that she was suffering from no serious condition. The plaintiff ultimately consulted another doctor who diagnosed her ill-being as a bilateral thrombosis. There was a dispute as to whether the first doctor had mentioned this earlier in his course of treatment. The supreme court held that the plaintiff did act within a reasonable time after she became aware of her true condition.

■■ In the instant case, the record discloses that the defendant on May 19, 1976, assured Gerald that he was making a good recovery. On October 14, 1976, Gerald claims that he inquired of defendant concerning his impo-

tency problem and that defendant allegedly replied that it was all in his head. Clearly a disputed question of fact was presented, and it was proper for the trial court to submit the question to the jury. We cannot say that their finding was against the manifest weight of the evidence.

Defendant also argues another aspect of the limitations question, namely, that assuming it to be a fact question it should have been submitted to a different jury from that which decided the liability issue. He bases this argument primarily on the fact that certain evidence was admitted on the limitations question which, he claims, had an adverse effect upon liability.

The plaintiff-wife testified over objection that a Dr. Borum had told them that Gerald's condition was permanent. Borum was never called to testify and defendant maintains that this testimony was damaging in that it was the only medical evidence of the permanency of the disability.

The record discloses that the trial court indicated a continuing objection but overruled it, stating that the testimony was being received "not for the truth of the matter asserted by Dr. Borum but only to show notice to this witness and possibly to the other plaintiff on the question of when the statute ran."

■■■ We find the court's admonition sufficient. Furthermore, there was no request for a separate jury at the trial level, and no allegation concerning it was made in the post-trial motion of defendant. The issue is raised for the first time on appeal and therefore has been waived.

The evidentiary issue concerns a report known in the record as an "American Health Profile." It appears that Gerald's trade union offered a routine physical examination to its members and their spouses. These were administered in a large van, or bus, and encompassed a number of routine tests such as blood pressure, sight and hearing. Also as part of the examination questions were answered to personnel in the van. The results of the examination were forwarded to the members' physicians. Gerald and his wife took the American Health Profile examination, and the results were sent to the defendant. All this occurred in 1973. A part of the questionnaire indicated that at that time Gerald was having problems with impotency.

The trial court allowed a motion *in limine* barring the use of the report at trial. Defendant attempted twice during offers of proof outside the presence of the jury to have the document introduced. The trial court denied the offers and the defendant now argues that this was error.

Defendant first maintains that the report is an exception to the hearsay rule as a medical record. We disagree. There was no evidence of who the personnel were who took the report, whether they were medically trained or not, and what the circumstances were. Defendant cites a series of cases (*e.g., People v. Ward* (1975), 61 Ill. 2d 559, 338

N.E.2d 171) in which a physician was permitted to testify from medical records not prepared by him or under his direction. These are clearly inapposite to the instant situation. They concerned the admissibility of the physician's testimony itself based on the records made by others. They had nothing to do with the admission of the records themselves.

■■ Admission of medical records is governed by Supreme Court Rule 236 (73 Ill. 2d R. 236), which prohibits the admission of medical records unless the proper foundation is laid. The recent supreme court opinion in *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, has somewhat relaxed the rule, but it, too, deals with testimony of experts based upon medical records, not with the admission of the records themselves, and in any event is prospective only. No foundation was laid for the admission of the American Health Profile, even assuming that it was a proper medical record.

■■ Defendant next argues that the profile was an admission by the plaintiffs and hence an exception to the hearsay rule. Again we disagree. A similar situation existed in *Stewart v. DuPlessis* (1963), 42 Ill. App. 2d 192, 191 N.E.2d 622. There the court denied admission into evidence to a document as an admission exception when there was no showing as to who transcribed it or who made it.

■■ Defendant's final contention is that on four occasions during closing argument plaintiffs' counsel made improper and inflammatory remarks. As to three of these, there was no objection made at the time and the issue as to them was not preserved in defendant's post-trial motion. They are therefore waived.

■■ The fourth remark was objected to and was preserved in the post-trial motion. On appeal defendant argues that it was a *per diem* argument which was condemned in *Caley v. Manicke* (1962), 24 Ill. 2d 390, 182 N.E.2d 206. We have examined the complained-of language and do not find it to be so. Counsel was suggesting possible figures to the jury for pain and suffering and mentioned Gerald's life expectancy. This falls short of the condemnation in *Caley* and was fair argument based on the evidence. *Johnson v. Chicago Transit Authority* (1973), 11 Ill. App. 3d 16, 295 N.E.2d 573.

The judgment of the circuit court of Champaign County is affirmed.

Affirmed.

TRAPP, P. J., and CRAVEN, J., concur.