Charlotte **ASHLAND**, as Administratrix of the Estate of Donald Edward Ashland, deceased, et al., Plaintiffs-Appellees,

v.

**LING–TEMCO–VOUGHT, INC.**, a corporation, et al., and United States of America, Defendants-Appellants.

Nos. 81–5163, 81–5175, 81–5213, 81–5214, 81–5375, 81–5376, 81–5460, 81–5529 to 81–5531, 81–5576, and 81–5590.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1982.

Decided July 29, 1983.

---

Robert S. Morris, San Bernardino, Cal., James J. McCarthy, Magana, Cathcart, McCarthy & Pierry, Los Angeles, Cal., Gerald V. Barron, Monterey, Cal., for plaintiffs-appellees.

David M. Heibron, McCutchen, Doyle, Brown & Enerson, San Francisco, Cal., Craig L. Winterman, Herzfeld & Rubin, Los Angeles, Cal., Philip A. Berns, Dept. of Justice, Warren A. Schneider, San Francisco, Cal., for defendants-appellants.

Before ANDERSON and PREGERSON, Circuit Judges, and SOLOMON,[*] District Judge.

J. BLAINE ANDERSON, Circuit Judge:

These consolidated wrongful death actions arise from the crash at sea of a military aircraft in 1971. Plaintiffs are heirs and personal representatives of nine servicemen and three civilians who died in the crash. All twelve plaintiffs filed suit under the Death on the High Seas Act ("DOHSA"), 46 U.S.C. §§ 761–767, against LTV,[1] a contractor who substantially modified component parts of the aircraft. The three civilian plaintiffs also filed suit against the United States under the Suits in Admiralty Act. 46 U.S.C. §§ 741–752.

These cases were consolidated for the liability phase of the trial, which commenced April 21, 1980. They were tried to the court with an advisory jury under Fed.R. Civ.P. 39(c). On May 23, 1980, the jury rendered verdicts in favor of plaintiffs against both defendants. Twelve separate damage trials were then held, and $28,587,989 in damages and prejudgment interest

---

[*] The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

1. Throughout its orders, the district court refers to LTV, *et al.* LTV stands for "The LTV Corporation" (formerly Ling-Temco-Vought, Inc.). The *et als* are subsidiaries of LTV, namely "Vought Corporation" (formerly LTV Aerospace Corporation), and "E–Systems, Inc." (formerly LTV Electrosystems, Inc.). All were named defendants in these actions.

was awarded. Timely appeals were filed under 28 U.S.C. § 1291.

The following chart may be helpful in organizing the common and opposing interests of the parties:

| Plaintiff-Appellee | Defendant-Appellant |
| --- | --- |
| Ashland, for the estate of Ashland | LTV and USA |
| Metcalf, for the estates of | |
| Blanchard | LTV and USA |
| Ditto | LTV and USA |
| McGinn | LTV |
| Unsderfer | LTV |
| Burnett | LTV |
| Stoddard, for the estate of Theriault | LTV |
| Page, for the estate of Page | LTV |
| Kenney, for the estates of | |
| Miles | LTV |
| Rose | LTV |
| Reinhart | LTV |
| Weimer | LTV |

The Ashland, Metcalf, and Stoddard plaintiffs have joined in the briefing. They are collectively referred to herein as the "Ashland plaintiffs."

The Page and Kenney plaintiffs have joined in the briefing. They are collectively referred to herein as the "Page plaintiffs."

Representatives of the three civilian plaintiffs (Ashland, Blanchard, and Ditto) suing the United States have joined in the briefing. They are collectively referred to herein as the "civilian plaintiffs."

Fourteen interested companies have joined in filing a brief as amici curiae. Amici are firms extensively engaged in the manufacture of aircraft, aviation equipment, and related components for both military and civilian uses, and trade associations of such companies.

I. FACTS

In early 1971, the United States Air Force determined to undertake a classified mission entitled "Project III." The mission was to involve surveillance of a series of "events"[2] which were to occur in the South Pacific in mid-June 1971. The aircraft selected for the mission was an Air Force C–135, a "beefed-up" military version of the Boeing 707. The aircraft is referred to throughout the briefs as "Aircraft 331."

Aircraft 331 required extensive modifications in order to perform its mission, and defendant LTV obtained a contract to perform the work. The modifications consisted primarily of manufacturing and installing a large aluminum fairing structure atop the aircraft's fuselage which housed a radar antenna; installing eleven observation windows along the starboard side of the aircraft; and removing a previously installed droopy-nose containing a radome and returning the aircraft's nose to its original C–135 configuration. The Air Force selected and supplied all the electronic and optical equipment for the mission.

LTV delivered Aircraft 331 as modified to the Air Force on May 21, 1971. LTV continued to have contractual duties in respect to Aircraft 331 throughout Project III, including periodic inspections of the structural modifications and maintenance of certain electronic equipment installed aboard the aircraft. Some LTV personnel were assigned on board to operate electronic equipment. Complete responsibility for maintaining and flying the aircraft, however, remained with the Air Force.

Aircraft 331 arrived at Hickam Air Force Base in Hawaii on June 3, 1971. On June 12, it departed Hickam and performed its initial data-gathering mission without incident, landing the same day in Pago Pago, American Samoa. The aircraft departed the next day for a return flight to Hickam. Normal position reports were received from the aircraft until approximately 3¼ hours into the flight, when the final position report was abruptly broken off and all transmission became silent. Scattered wreckage from the aircraft was recovered 700 miles southwest of Honolulu, Hawaii; no bodies

---

**2.** The parties disagree as to the nature of these "events." Plaintiffs characterize Project III as a mission designed to gather data of "atmospheric disturbances." Defendants and amici entitle the project a "secret" mission intended to "spy" on atmospheric nuclear testing by foreign governments.

were ever found. The crash occurred 38.2 flight hours after the modification work was completed. The cause of the crash remains a mystery.

In a pretrial order, the district court ruled that, on plaintiffs' allegations, the doctrine of *res ipsa loquitur* was applicable against both defendants. *Stoddard v. Ling-Temco-Vought, Inc.,* 513 F.Supp. 314, 320–22 (C.D.Cal.1980). LTV argued strenuously that *res ipsa* could not apply to it because it had no control over the instrumentality that caused the injury. The court disagreed, reasoning that *res ipsa* can apply against multiple defendants who "share control and assume joint responsibility" for the instrumentality. *Id.* at 321.

At the close of the evidence, the district court determined that the elements of *res ipsa* had been established as a matter of law. Accordingly, the jury was instructed: "You may infer that the death of the plaintiffs' decedents was caused by the negligence of the defendants." Applying that instruction, the advisory jury returned a verdict for plaintiffs, after which the court entered Findings of Fact and Conclusions of Law. Among other things, the court found that "the crash of Aircraft 331 under the circumstances of these cases is the kind of occurrence which ordinarily does not happen in the absence of negligence"; that LTV and the United States "had joint responsibility over and shared control of Aircraft 331 and its modifications"; and that "no portions of the aircraft which were unaffected by the modifications performed by defendants LTV, *et al.,* proximately caused or contributed to the crash."

Separate damage trials began some five months later. The advisory jury adopted verbatim the economic analyses of plaintiffs' economist, after which the court entered judgment for the twelve claimants in the total amount of $13,419,612 damages plus $15,168,377 prejudgment interest. On appeal, defendants raise numerous issues concerning both the liability and damage phases of trial. Because we are unable to determine from the district court's findings whether it considered the necessary principles of *res ipsa loquitur* as applied to multiple defendants, we remand for further proceedings. We do not address the damage issues.

## II. JURISDICTION

■ Our initial task is to deal with the government's contention that federal jurisdiction is lacking over claims brought by two civilian plaintiffs. On March 28 and May 16, 1973, respectively, administrative claims were filed on behalf of decedents Blanchard and Ditto against the United States. Complaints were then filed for the deaths of both decedents on June 8, 1973, alleging jurisdiction under the Federal Tort Claims Act. 28 U.S.C. §§ 1346(b), 2401(b), 2671–2680. The local United States Attorney was served on September 27, 1973, in the *Blanchard* action, and on October 4, 1973, in *Ditto.* The Attorney General was served on October 1, 1973, in *Blanchard,* and on October 8, 1973, in *Ditto.* On July 8, 1977, the district court dismissed the *Blanchard* and *Ditto* complaints for lack of subject matter jurisdiction, recognizing that the Suits in Admiralty Act provided exclusive jurisdiction in the cases.[3] The civilian plaintiffs were granted leave to amend the complaints to allege jurisdiction properly under the Suits in Admiralty Act. They filed timely amended complaints (more precisely, "libels," in admiralty) and accomplished forthwith service, and the district court applied Fed.R.Civ.P. 15(c) to allow the amended complaints to relate back to the date of the originals.

The government contends on appeal that jurisdiction is still lacking over *Blanchard*

---

**3.** Plaintiffs apparently concede that, because the accident occurred at sea and the flight of Aircraft 331 involved "transoceanic transportation," a maritime tort was alleged. *See T.J. Falgout Boats, Inc. v. United States,* 508 F.2d 855 (9th Cir.1974), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2398, 44 L.Ed.2d 667 (1975); *Roberts* *v. United States,* 498 F.2d 520 (9th Cir.), *cert. denied,* 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974). Plaintiffs' exclusive remedy for a maritime tort committed by the United States is the Suits in Admiralty Act. 46 U.S.C. § 745; 28 U.S.C. § 2680(d).

and *Ditto* for two reasons: because plaintiffs failed to comply with the "forthwith service" requirement of the Suits in Admiralty Act; and because plaintiffs filed suit under the Federal Tort Claims Act before that statute's period had elapsed for agency action on the administrative claims.

Under the Suits in Admiralty Act, once a claimant files an action he must forthwith serve the United States Attorney for the district in which the action was filed and effect service by registered mail on the Attorney General of the United States. 46 U.S.C. § 742. Suits under the Act are barred if not brought within two years after the cause of action arises. Id. § 745. The instant actions were, therefore, filed five days before the statute of limitations expired, but service did not occur until over 100 days later. The government cites a line of cases from this court interpreting "forthwith service" to mean that a delay in service results in dismissal when a portion of the delay extends beyond the period of limitations. *Kenyon v. United States,* 676 F.2d 1229 (9th Cir.1981) (service delayed until 60 days after suit filed; 55 days after limitations period expired); *Barrie v. United States,* 615 F.2d 829 (9th Cir.1980) (service delayed until 64 and 62 days after suit filed; 29 and 27 days after limitations period expired); *Owens v. United States,* 541 F.2d 1386 (9th Cir.1976), *cert. denied,* 430 U.S. 945, 97 S.Ct. 1580, 51 L.Ed.2d 792 (1977) (service delayed until 58 days after suit filed; 14 days after limitations period expired). Plaintiffs respond that they were proceeding, albeit erroneously, under the Federal Tort Claims Act, which contains no "forthwith service" requirement. Plaintiffs cite several cases that have permitted amendment of complaints erroneously filed under the Federal Tort Claims Act in order to allege admiralty as a jurisdictional basis. *E.g., Beeler v. United States,* 338 F.2d 687 (3d Cir.1964); *Mings v. United States,* 222 F.Supp. 996 (S.D.Cal.1963); *Liberty Mutual Ins. Co. v. United States,* 183 F.Supp. 944 (E.D.N.Y.1960), *aff'd,* 290 F.2d 257 (2d Cir. 1961); *Weiss v. United States,* 168 F.Supp. 300 (D.N.J.1958).

The trial court's grant of leave to amend the pleadings under Fed.R.Civ.P. 15(a) is reviewed for abuse of discretion. *Raynor Brothers v. American Cyanimid Co.,* 695 F.2d 382, 384 (9th Cir.1982). We accept the general principle announced in plaintiffs' cases that the district court does not abuse its discretion in allowing a complaint erroneously filed under the Federal Tort Claims Act to be amended to state a proper basis of jurisdiction under the Suits in Admiralty Act. That proposition is merely a reflection of the rule that if facts giving the court jurisdiction are sufficiently set forth in the complaint, amendment is freely granted to cure a defective jurisdictional statement. *Schlesinger v. Councilman,* 420 U.S. 738, 744 n. 9, 95 S.Ct. 1300, 1306, 43 L.Ed.2d 591, 601 (1975); *Pioche Mines Consolidated, Inc. v. Dolman,* 333 F.2d 257, 264 (9th Cir.1964), *cert. denied,* 380 U.S. 956, 85 S.Ct. 1081, 13 L.Ed.2d 972 (1965); 28 U.S.C. § 1653; 3 J. Moore, *Moore's Federal Practice* § 15.09 (2d ed. 1982).

Plaintiffs' cases, however, do not address the issue whether "forthwith service" need be accomplished along with the original defective complaint. Without expressing our opinion on what may be the result in other cases, we think in this case forthwith service after the original filing was unnecessary. This is not a case where the district court simply allowed amendment or transferred a legal action to its admiralty jurisdiction. Here, the district court dismissed completely plaintiffs' complaints for lack of jurisdiction, requiring filing of amended complaints and forthwith service thereof. The court's grant of leave to amend complaints dismissed for lack of subject matter jurisdiction was entirely proper. *Scott v. Eversole Mortuary,* 522 F.2d 1110, 1116 (9th Cir.1975); 3 J. Moore, *Moore's Federal Practice* ¶ 15.10 (2d ed. 1982). When plaintiffs complied with the district court's leave and re-served the government forthwith, that process superseded the original filing and service. *Loux v. Rhay,* 375 F.2d 55, 57 (9th Cir.1967). The only remaining significance of the original filing was the date it was accomplished and the notice

of plaintiffs' claims it imparted to the government; these were relevant for purposes of Rule 15(c) "relation back" analysis. Thus, in this narrow context, plaintiffs' original failure to comply with the forthwith service requirement of the Suits in Admiralty Act or the six-month waiting period under the Federal Tort Claims Act is irrelevant. *Cf. Drakatos v. R.B. Denison, Inc.,* 493 F.Supp. 942, 945 (D.Conn.1980) (no need for original complaint to even have made out a colorable or valid cause of action).

We have no trouble deciding that plaintiffs' subsequent filing and service were properly allowed to relate back under Rule 15(c). Rule 15(c)'s requirement that the claim in the amended pleading arise "out of the conduct, transaction, or occurrence set forth ... in the original pleading" is satisfied. Only the jurisdictional basis has changed; the factual allegations remain unaltered and no new parties were added or new claims asserted. *See Boyce v. Anderson,* 405 F.2d 605, 607 (9th Cir.1968); 3 J. Moore, *Moore's Federal Practice* ¶ 15.15[3], at 15–206 (2d ed. 1982).

Nor is there any question that the government had notice of the claims embodied in the amended pleadings. *See SEC v. Seaboard Corp.,* 677 F.2d 1301, 1314 (9th Cir.1982). The government was processing administrative claims presented by plaintiffs well prior to the expiration of the two-year statute of limitations. Extensive discovery was conducted by all parties for nearly four years before the government moved to dismiss. We hold, therefore, that under Rule 15(c) the amended complaints relate back to the original filing date, June 8, 1973. Plaintiffs complied with the forthwith service requirement of the Suits in Admiralty Act when they served the amended complaints.

## III. RES IPSA LOQUITUR

 *Res ipsa loquitur* is a form of circumstantial evidence that permits an inference of negligence to be drawn from a set of proven facts. *Wilson v. United States,* 645 F.2d 728, 730 (9th Cir.1981). The traditional elements needed to invoke [*res ipsa loquitor*] are (1) an injury-producing event of a kind that ordinarily does not occur in the absence of someone's negligence; (2) the event must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) the event must not have been due to any voluntary action or contribution on the part of the plaintiff. *Olsen v. States Line,* 378 F.2d 217, 220 (9th Cir.1967); W. Prosser, *Law of Torts* § 39 at 214 (4th ed. 1971). The doctrine is applicable in admiralty cases. *See Wilson v. United States,* 645 F.2d 728 (9th Cir.1981); *Trihey v. Transocean Air Lines, Inc.,* 255 F.2d 824, 827–28 (9th Cir.), *cert. denied,* 358 U.S. 838, 79 S.Ct. 62, 3 L.Ed.2d 74 (1958).

### A. Instruction to Advisory Jury

Defendants offered Devitt & Blackmar's standard *res ipsa* instruction,[4] which sets forth the elements of the doctrine essentially as described above. The trial court refused defendants' offer, instead instructing the jury in *pertinent* part as follows:

This Court has determined as a matter of law that this is an accident that does not occur in the absence of negligence; that this negligence is most probably that of the defendants; that no voluntary action on the part of plaintiffs' decedents caused or contributed to the accident.

As a result of this determination you may infer that the death of the plaintiffs' decedents was caused by the negligence of the defendants.

Defendants contend that the instruction given was erroneous because it withdrew from jury consideration the question whether the elements of *res ipsa* had been established. We need not decide whether the instruction was error because of the advisory nature of the jury.

 It is a question of law whether *res ipsa* may apply to a given set of facts. *Jordan v. City of Hillsboro,* 48 Or.App. 839, 617 P.2d 970, 971 (1980); 1 S. Speiser, *Res Ipsa Loquitur* § 5:25 (1972); *Restatement*

---

**4.** 3 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 80.08 (1977).

*(Second) of Torts* § 328D(2) (1965). Whether or not the facts necessary to establish the elements of the doctrine are present, on the other hand, is a question of fact. *Newing v. Cheatham,* 15 Cal.3d 351, 360, 540 P.2d 33, 40, 124 Cal.Rptr. 193, 200 (1975) (en banc); *Thompson v. Lietz,* 95 Ill.App.3d 384, 50 Ill.Dec. 915, 918–19, 420 N.E.2d 232, 235–36 (1981); *Crist v. Civil Air Patrol,* 53 Misc.2d 289, 278 N.Y.S.2d 430 (1967); S. Speiser, *supra,* § 5:25. In a jury trial, we think the jury should be instructed that the elements of *res ipsa* are established as a matter of law only when reasonable minds could reach but a single conclusion from the established facts, with all reasonable inferences favoring the defendants. *See Restatement, supra,* § 328D(3).

 The instant case, however, was tried to the court with an *advisory* jury. Under these circumstances, "[r]eview on appeal is of the findings of the court as if there had been no verdict from an advisory jury, and there can be no review of supposed errors relating to rulings before and instructions to the advisory jury." 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2335 (1971). We address the district court's findings in the following section.

### B. The "Control" Element and the Multiple Defendant Problems

In its pretrial order, the district court held that the doctrine of *res ipsa loquitur* could apply against both LTV and the United States. 513 F.Supp. at 320–22. LTV contends on appeal, as it did below, that "the [*res ipsa loquitur*] doctrine does not apply to one responsible merely for a component part of the instrumentality which causes the injury." LTV's reasoning is that since the government initiated and carried out Project III, and controlled the use, operation, and maintenance of Aircraft 331, LTV could not have had the "exclusive control" required for invocation of *res ipsa.* Amici go even further, contending that under the trial court's reasoning, "every manufacturer, supplier, fabricator, servicer, repairer and maintainer of aircraft, equip-

ment and instruments would be in 'joint control' of an aircraft for *res ipsa* purposes." While we do not foresee the parade of horribles envisioned by LTV and amici, we do agree that the factfinder in a multiple defendant *res ipsa* case must carefully consider issues not presented in a single defendant case. What follows is our attempt to offer some guidance in this puzzling area of tort law. In multiple defendant *res ipsa* cases tried to a jury, the following principles should be included in the instructions. In court trials, such as the instant case, the judge must consider the following principles and make findings of fact and conclusions of law regarding them.

At the outset, we note that a multiple defendant case seems to pose no additional problems to satisfying the first and third elements of *res ipsa.* The purpose of the first condition is to establish that the accident more probably than not was caused by negligence. W. Prosser, *supra,* § 39, at 218. The question whether the general type of accident will normally occur in the absence of negligence is not related to the presence of multiple defendants. Likewise, the third condition should not be affected by reason of the presence of multiple defendants because it concerns solely the plaintiffs' freedom from contributory negligence.

The problem comes in establishing the "control" element. The purpose of the element is "to link the defendant with the probability, already established, that the accident was negligently caused." *Newing v. Cheatham,* 15 Cal.3d at 362, 540 P.2d at 41, 124 Cal.Rptr. at 201. Control is merely one method of proving the defendant's responsibility, and he may be equally responsible for plaintiff's injuries where he has no actual, physical control at all. *See Restatement, supra,* § 328D comment g. Prosser would discard the idea of control altogether, and "say merely that the apparent cause of the accident must be such that the defendant would be responsible for any negligence connected with it." W. Prosser, *supra,* § 39, at 221. The Restatement approach follows Prosser's suggestion, replacing the control element with the requirement that

"other responsible causes . . . are sufficiently eliminated by the evidence." *Restatement, supra,* § 328D(1)(b). Some courts have followed the Restatement's lead. *E.g., Gilbert v. Korvette, Inc.,* 457 Pa. 602, 327 A.2d 94, 99–100 (1974). It will become apparent below that we do not think it critical to discard the "control" language, so long as, in the proper case, "control" is defined in terms of plaintiff's injury being probably caused by a breach of duty for which defendant is responsible.

■ *Res ipsa* can apply as well to multiple defendants who *share* responsibility for the probable cause of the accident. Responsibility of two or more defendants can be shown in a number of ways. Defendants may be liable for the negligence of each other, as, for example, where the accident occurs during a joint venture or employer-employee relationship. See cases cited in S. Speiser, *supra,* § 4:9; McCoid, *Negligence Against Multiple Defendants,* 7 Stan.L.Rev. 480, 488–90 (1955); Note, *The Application of Res Ipsa Loquitur in Suits Against Multiple Defendants,* 1954 Wash.U.L.Q. 215. Similarly, defendants may be jointly and severally liable where they engage in concerted action. See cases cited *id.; Restatement, supra,* § 328D comment g. In some cases, defendants will have no particular relationship with each other, but both will owe plaintiff an identical independent duty of care. For example, in *Colditz v. Eastern Airlines, Inc.,* 329 F.Supp. 691 (S.D.N.Y. 1971), two airliners collided in mid-air. The crews of both aircraft owed an identical duty to the passengers of both aircraft to operate the planes in a reasonable manner. *See also Samson v. Riesing,* 62 Wis.2d 698, 215 N.W.2d 662 (1974) (each of 11 individual preparers of food owed plaintiffs identical duty of care). Other "joint control" cases may involve multiple defendants who owe plaintiff independent but dissimilar duties. For example, a defendant product manufacturer has the duty to use reasonable care in designing and constructing a product, and an operator of the product has the duty to use it, as constructed, in a reasonable manner to avoid injury to others. The instant case is, at the very least, an example of this last type of "joint control," and the record

may also support its characterization as one or more of the preceding types.

■ In the first situation described above, we see no problem in describing the "control" element of *res ipsa* in the traditional terms of "exclusive" or "joint control" once a negligence-imputing relationship has been found. In the independent duty situations, however, the terminology "joint control" is misleading unless defined in terms of responsibility for the injury-producing event. In other words, the factfinder can determine that a particular defendant has control or responsibility for the injury-producing event only if plaintiff proves the breach of that defendant's duty was more probably than not a contributing cause of the event. *See Gerard v. American Airlines, Inc.,* 272 F.2d 35, 37 (2d Cir. 1959); *Bias v. Montgomery Elevator Co.,* 216 Kan. 341, 532 P.2d 1053 (1975); *Giant Food, Inc. v. Washington Coca-Cola Bottling Co.,* 273 Md. 592, 332 A.2d 1 (1975); *Spannaus v. Otolaryngology Clinic,* 308 Minn. 334, 242 N.W.2d 594 (1976); *Firemen's Fund American Insurance Co. v. Knobbe,* 93 Nev. 201, 562 P.2d 825 (1977); *Centrone v. C. Schmidt & Sons, Inc.,* 114 Misc.2d 840, 452 N.Y.S.2d 299 (1982). *See generally* McCoid, *Negligence Actions Against Multiple Defendants,* 7 Stan.L.Rev. 480 (1955). Plaintiff's burden can be sustained by establishing a specific cause of the event that was within one or both defendants' responsibility, or by showing that one or both defendants were responsible for all reasonably probable causes of the event. *Restatement, supra,* § 328D comment g. Every possible cause need not be eliminated, but only those that the factfinder believes could have reasonably contributed to the accident. *Giant Food, Inc.,* 332 A.2d at 4–5; W. Prosser, *supra,* § 39, at 218.

■ In a case such as the instant one, where the precise cause of the accident remains a mystery, it may appear impossible for plaintiff to sustain his burden. It is to be remembered, however, that *res ipsa* deals with probabilities and with circumstantial evidence. Since it will have already been decided that the accident was more probably than not due to negligence of some kind, it is permissible to examine

what kinds of negligent conduct generally could cause the accident and to introduce circumstantial evidence of those probable causes. In the instant case, it would be permissible for the trial court to take evidence of accident statistics such as the ones amici append to their brief.[5] Those statistics, published by the National Transportation Safety Board, suggest that negligent *operation* of aircraft is the most frequent cause of general aviation and air carrier accidents. Manufacturing defects account for a minimal percentage, according to the NTSB. If a factfinder accepted the NTSB's statistics, product manufacturers would generally be free from the *res ipsa* inference when an aircraft crashes, unless the circumstances of the crash somehow suggest that their product more probably than not was a contributing cause.[6]

■ The circumstances of the crash of Aircraft 331 may or may not be suggestive of LTV's responsibility. Certainly, LTV is more than the average component product manufacturer described above; it performed major structural modifications to Aircraft 331 just 38.2 flight hours before the crash. The probability that some defect in LTV's workmanship contributed to the crash increases proportionately. It is a close factual question whether LTV was more probably than not a contributing cause of the crash. Unfortunately, it is a factual question that we are unable to re-

view on the present record. In a *res ipsa* case involving multiple defendants, it is impossible for this court to review the simple conclusion that defendants "had joint responsibility over and shared control" of the injury-producing instrumentality without knowing the basis on which joint control was established. We remand, therefore, for reconsideration of the district court's finding of joint control in light of this opinion. Upon reconsideration, if the district court adheres to its finding of joint control it is directed to make additional findings regarding either a negligence-imputing relationship between defendants or the fact that a breach of each defendant's independent duty was more probably than not a contributing cause of the crash.[7] If the court is unable to make such findings on the present record, a retrial limited to those issues is in order.

■ We address one final concern in the district court's pretrial order. After holding the *res ipsa* doctrine applicable to both defendants, the district court stated: "If the proof establishes that LTV, *et al.,* did not contribute to any of the causative factors for this crash, the court will rule as a matter of law that the elements of *res ipsa loquitur* have not been met as to LTV, *et al.,* and the inference of negligence shall not be drawn." 513 F.Supp. at 322. LTV interprets that language, together with the tenor of the court's subsequent jury instruc-

**5.** *Annual Review of Aircraft Accident Data— U.S. General Aviation, Calendar Year 1978* [Report No. NTSB–ARG–80–1] (May 20, 1980); *U.S. Air Carrier Operations, 1978* [Report No. NTSB–ARC–80–1] (Oct. 6, 1980).

**6.** An example of how the circumstances of a crash might suggest a product defect is found in *Becker v. American Airlines, Inc.,* 200 F.Supp. 839 (S.D.N.Y.1961). In *Becker,* heirs of passengers killed in the crash of an airliner sued the airline, the airplane manufacturer, and the manufacturer of altimeters installed in the airplane. There was evidence that the altimeters, which were sealed at the factory, indicated an altitude of 500 feet when the plane was at 50 feet. *Id.* at 244. This evidence satisfied the trial court that some malfunction of the altimeters contributed to the cause of the crash, and it therefore held all three defendants subject to the doctrine of *res ipsa loquitur. See also Browder v. Pettigrew,* 541 S.W.2d 402

(Tenn.1976) (collapse of car's right wheel resulting in one-car accident identified the operative mechanism linking the manufacturer to the cause of the accident).

**7.** The district court's finding no. 20 states, in relevant part, "[N]o portions of the aircraft which were unaffected by the modifications performed by defendants LTV, *et al.,* proximately caused or contributed to the crash of Aircraft 331 on June 13, 1971." By negative implication, that finding seems to place responsibility on LTV no matter what the accident's cause. As we have said, it is possible that LTV is responsible for all reasonably probable causes, but not without a finding either that its modification work was the sole reasonably probable cause or that, because of its relationship to the Air Force, it is vicariously liable for injury attributable to the government's neglect. The district court has made neither finding.

tion and findings of fact, to mean that the burden was placed on LTV to prove it was not responsible for any causative factors of the crash. While that interpretation of the language is not entirely compelling to us, we want to make clear that the burden is on and remains with plaintiffs to establish each of the *res ipsa* elements. Only when the elements are established may an inference of negligence be raised, and then, as the district court's jury instruction noted, the factfinder may accept or reject the inference whether or not the defendant introduces rebuttal evidence. *Sweeney v. Erving,* 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815 (1913); *Ursich v. da Rosa,* 328 F.2d 794 (9th Cir.), *cert. denied,* 379 U.S. 920, 85 S.Ct. 273, 13 L.Ed.2d 334 (1964).

Accordingly, we REMAND for proceedings in conformance with this opinion.